## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ROY GABALDON,**

        **Plaintiff,**

        **vs.**                              **Civ. No. 23-481  JFR/LF**

**THE TOWN OF MOUNTAINAIR,**
**a municipality existing under the laws**
**of the State of New Mexico, and PETER**
**NIETO, Individually, and JUAN DE REYES,**
**Individually,**

        **Defendants.**

### MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on Defendants' Joint Motion for Summary Judgment ("Motion"), filed March 1, 2024.  Doc. 36.  On March 28, 2024, Plaintiff filed a Response.  Doc. 38.  On April 25, 2024, Defendants filed a Reply.  Doc. 40.  The Court, having considered counsel's arguments, the record, and the relevant law, FINDS that Defendants' Motion is well taken and is **GRANTED.**

### I.  PROCEDURAL BACKGROUND

On March 29, 2023, Plaintiff filed a *Civil Complaint Under the New Mexico Tort Claims Act; The New Mexico Civil Rights Act and 42 U.S.C. 1983* in the State of New Mexico, County of Torrance, Seventh Judicial District Court.  Doc. 1-1.  In his Complaint, Plaintiff alleges that in March and April 2020, he applied for, was offered, and he accepted employment with the Town

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 9-12.)

of Mountainair/Mountainair Police Department as a police officer, but that before his agreed upon start date the job offer was improperly rescinded.  Plaintiff alleges that Defendants failed to inform him he had a right to request a hearing and grieve the rescinded offer in front of the Town Council in violation of the Town's policies and procedures.  Plaintiff further alleges that Defendant Reyes told a now-former Mountainair police officer that Plaintiff had not been hired because he was a "child molester," and that Defendants Reyes and Nieto talked in the police station about Plaintiff being under investigation for "child molestation."  Plaintiff further alleges that his application and employment file were located in the lobby of the Mountainair Police Department for anyone to see.  Plaintiff alleges that defamatory comments about him continue to be circulated by "agents, employees, and officers, of Defendant."

Based on these alleged facts, Plaintiff brings five counts in his Complaint, *i.e.,* Count I – Violation of the New Mexico Civil Rights Act; Count II – Violation of the New Mexico Tort Claims Act for Defamation, and Violation of Property Rights; Count III – Breach of Express and/or Implied Contract of Employment; Count IV – Violation of 42 U.S.C. § 1983 Violation of Due Process (Procedural and Substantive), and Defamation Against All Defendants; and Count V – Claims of Supervisory and City Liability Under 42 U.S.C. § 1983 Against the Defendant The Town of Mountainair.  *Id.*

On June 2, 2023, Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1331.  Doc. 1.

## II.  LEGAL STANDARD

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Jones v. Kodak Med.*

*Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 106 S. Ct. at 2552 (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986); Fed. R. Civ. P. 56(c). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 106 S. Ct. at 2512. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 2510. To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to

support the nonmoving party's case.'" *Id.* (quoting *Catrett*).  Once the moving party meets its

burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by

the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Catrett*, 106 S. Ct. at 2552 (quoting Fed. R. Civ.

P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat

summary judgment but rather must produce some specific factual support of its claim.  *See*

*Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988);

*Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 106 S. Ct.

1348, 1356 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view

the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all

reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp.

1277, 1281 (D. Kan. 1997).  If there is no genuine issue of material fact in dispute, then a court

must next determine whether the movant is entitled to judgment in its favor as a matter of law.

*See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

## III.  UNDISPUTED MATERIAL FACTS

On March 17, 2020, Plaintiff applied for a job as a police officer at Mountainair Police

Department ("MPD").  Doc. 1-1 at ¶ 8; Doc. 36 at 3, ¶ 1; Doc. 38 at 2, ¶ 1.  At the request of

Defendant Mayor Peter Nieto and the Town Clerk, Defendant Chief of Police Juan de Reyes

initiated and completed an initial background check.[2]  Doc. 1-1 at ¶ 10; Doc. 36 at 3, ¶ 2;

---

[2] The parties do not dispute that the Town of Mountainair's application for police officers explicitly lists a "Full FBI/NMDPS Background Investigation on Personal Character and Employment References," *inter alia*, as a qualification for employment.  Doc. 36-6 at 1.

Doc. 36-2 at 1, Doc. 38 at 2, ¶ 1.  On April 7, 2020, the Town Council approved the hiring of a

certified police officer with MPD.  Doc. 1-1 at ¶ 11; Doc. 36 at 3, ¶ 4; Doc. 38 at 2, ¶ 1; Doc. 38-

2 at 9.  Because the initial background check was favorable, on April 13, 2020, Defendant Reyes

recommended Plaintiff be approved by the Town Council for hire as a police officer with MPD.

Doc. 36 at 3, ¶ 3; Doc. 36-2 at 3; Doc. 38 at 2, ¶ 1.  The Town Council offered Plaintiff the job

of police officer, which Plaintiff accepted, with an agreed upon start date of April 20, 2020.

Doc. 36 at 2; Doc. 38 at 6, ¶ G.

Plaintiff previously worked as a security officer at St. Pius High School and after leaving

that employment engaged in a social media message exchange with a female high school student,

Sierra Saenz.[3]  Doc. 36 at 3, ¶ 8; Doc. 36-2 at 21; Doc. 36-3 at 12-13.  On April 18, 2020,

Defendant Nieto notified Defendant Reyes of a complaint he received regarding Plaintiff texting

an 18 year old female St. Pius High School student and that the complaining party, Patrick Ficke,

thought it was not suitable for an adult to be texting female students "who are minors."[4]  Doc. 36

at 3, ¶¶ 5-7; Doc. 38 at 2-3, ¶ 2.  Defendant Reyes then reopened the background check on

Plaintiff to conduct a special investigation.[5]  Doc. 36 at 3, ¶ 9.  On or about April 18, 2020,

Defendant Reyes informed Plaintiff that the Town of Mountainair had received complaints about

Plaintiff sending messages to an underage girl and asked Plaintiff whether he "had been under

---

[3] Plaintiff does not dispute that he was exchanging text messages with Sierra Saenz.  In his Response, Plaintiff explains
that Sierra Saenz contacted him and asked to "friend him" after she had already graduated.  Doc. 38 at 3.  In his
deposition, however, Plaintiff testified that when he last had contact with Sierra Saenz, "she was getting ready to
graduate."  Doc. 38-1 at 6.

[4] Plaintiff does not dispute that Defendant Nieto received a complaint from Patrick Ficke about Plaintiff's text
messaging with Sierra Saenz.  In his Response, Plaintiff disputes that he ever sent an unsuitable text to a minor student
at St. Pius High School.  Doc. 38 at 3, ¶ 4.i. Defendants state this is opinion and, therefore, is not genuinely disputed.
Doc. 40 at 3.

[5] Plaintiff does not dispute that the background investigation was reopened.  Instead, he contends there was no reason
to continue a background investigation.  Doc. 38 at 3, ¶ 6.i.  Defendants state this is opinion and, therefore, is not
genuinely disputed.  Doc. 40 at 3.

investigation for any type of actual harassment or sexual harassment of minors."  Doc. 36 at 4, ¶ 14; Doc. 38 at 4, ¶ 11.  Plaintiff provided Defendant Reyes with the text messages exchanged between himself and Sierra Saenz.  Doc. 36-3 at 28; Doc. 4 at 3, ¶ 9.

On April 19, 2020, Defendant Reyes told Plaintiff he was going to have to wait to start employment which was scheduled to begin on April 20, 2020.  Doc. 38 at 7, ¶ J; Doc. 40 at 4. On April 20, 2020, the complaining party's wife/fiancée, Annittra Atler, provided Defendant Reyes with a copy of messages exchanged between herself and Plaintiff regarding Plaintiff's communications with Sierra Saenz.[6]  Doc. 36-2 at 3, 19-21.  On April 21, 2020, Defendant Reyes told Plaintiff the employment offer was rescinded.[7]  Doc. 38 at 7, ¶ K; Doc. 40 at 4.  On April 22, 2020, Defendant Reyes sent a letter (dated April 21, 2020) to Plaintiff on behalf of Defendant Nieto and the Town of Mountainair informing Plaintiff in writing that the offer of employment had been rescinded.[8]  Doc. 36 at 4, ¶ 16; Doc. 36-2 at 1, 4; Doc. 38 at 5, ¶ 13. Plaintiff was hired by the Thirteenth Judicial District Attorney's office shortly after the rescinded offer, and later medically retired from law enforcement due to a shoulder injury.  Doc. 36 at 4, ¶ 17; Doc. 40 at 3, ¶ 11.

---

[6] Attached to Defendants' Motion is the Background Investigation initiated by Defendant Reyes at the request of Defendant Nieto and the Town Clerk.  Doc. 36-2 at 1-4.  Defendant Reyes noted a "Special Investigation-Re-Open BI on Applicant Gabaldon  - 4-18-2020" based on a text message he received from Defendant Nieto informing him that a concerned parent of a student wanted to file a complaint against Gabaldon.  *Id.* at 3.  Defendant Reyes noted, *inter alia*, that he reached out to the complainant.  *Id.*

[7] Plaintiff does not dispute that the job offer was rescinded.  Instead, Plaintiff alleges it was improperly rescinded because it was not approved by the Town Council.  Plaintiff cites Affiant Ernie Lopez, a former member of the Mountainair Town Council, who attests that the Town Council did not take action at the Town Council's April 21, 2020, meeting to rescind Plaintiff's offer of employment.  Doc. 38-2 at 3.  Plaintiff also cites Defendant Nieto's deposition testimony in which he testifies that neither he nor the Town Council reviewed the letter Defendant Reyes prepared rescinding the job offer.  Doc. 38-3 at 2-3.  Defendants dispute that the Town Council did not take action regarding rescinding the offer and dispute that whether Defendant Nieto or the Town Council reviewed the letter of rescission sent to Plaintiff is immaterial.  Doc. 40 at 3.

[8] Plaintiff does not dispute that a letter rescinding the offer was sent to him.  Instead, Plaintiff alleges he never received a copy of the letter.  Doc. 38 at 9, ¶ CC.  Defendants dispute this as immaterial.  Doc. 40 at 3.

## IV.  ANALYSIS

### A.    Supplemental Jurisdiction

Some of the claims asserted in Plaintiff's Complaint arise under federal law, while others arise under state law.  As diversity of citizenship is not alleged in this case, Plaintiff's state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Before doing so, however, the Court must consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction over the state-law claims.  *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).  In this case the Court concludes that these factors weigh in favor of retaining jurisdiction because Plaintiff's state-law claims are closely intertwined with his federal claims, rely on the same set of facts, and are subject to disposition based on clearly established law.  Hence, the Court elects to exercise supplemental jurisdiction over Plaintiff's state-law claims and resolve all of the claims addressed in Defendants' Motion.

### B.    Statute of Limitations

#### 1.    Count I – New Mexico Civil Rights Act ("NMCRA")

Plaintiff incorporates the allegations in his Complaint to support Count I in which he claims violations of the NMCRA.  Doc. 1-1 at 6-8.  Based on Plaintiff's allegations, Plaintiff broadly claims that Defendants, and their officers and agents, conspired to and deprived him of each and every right, privilege and immunity enumerated in the New Mexico Bill of Rights,

including his rights to due process, both procedural and substantive, including his liberty interest to engage in his chosen profession. *Id.*

In their Motion, Defendants argue that Plaintiff's claim pursuant to the NMCRA is time-barred. *Id.* Defendants cite NMSA § 41-4A-12 and argue that it bars recovery for alleged violations that occurred prior to July 1, 2021. *Id.*

In the alternative, Defendants argue that even if not time barred, Plaintiff is unable to prove a claim under the NMCRA for two reasons. First, Defendants argue that if Plaintiff was an employee of the Town of Mountainair/MPD, as he contends he was, the NMCRA explicitly prohibits individuals employed by a public body from using the NMCRA "to pursue a claim arising from the individual's employment by the public body." Doc. 36 at 8 (citing NMSA 1978, § 41-4A-3.B.). Second, Defendants argue that if Plaintiff was not an employee, Plaintiff cannot establish any altered legal status as a result of the alleged defamatory statement. *Id.* at 9. Defendants argue that establishing a claim for defamation under the NMRCA has yet to be addressed, but that if a similar standard were applied as that found under Section 1983, more must be involved than simple defamation to demonstrate the deprivation of a "liberty" or "property" interest protected by the Due Process Clause. *Id.* at 9 (citing *Paul v. Davis*, 424 U.S. 693, 711-12 (1976)). Defendants argue that here Plaintiff points to only two alleged defamatory comments made around the time his job offer was rescinded and fails to allege any other state actions that would rise to the level of ongoing and public harassment. *Id.* Defendants further claim that Plaintiff was able to secure employment shortly after the rescinded offer and later medically retired from law enforcement due to a shoulder injury unrelated to this case. *Id.*

In his Response, Plaintiff contends he has stated a cause of action of the NMCRA because he has alleged that Defendants conspired to deprive him of his "liberty interests (i.e. a

name clearing hearing), and procedural and substantive due process rights along with defamation." Doc. 38 at 14-16. Plaintiff contends that he has alleged in his Complaint that the defamatory comments about him continue to be circulated and that he has also alleged "ongoing and public harassment." *Id.* Finally, Plaintiff contends that Defendants' citation to the federal standard for stating a claim for defamation has no application here. *Id.*

In their Reply, Defendants assert that Plaintiff has not shown any damages related to the alleged defamatory comments. Doc. 40 at 7-8. Defendants assert that Plaintiff testified he chose to seek work that did not include patrol duties; that he later was medically disqualified from work as a law enforcement officer because of an injury to his shoulder unrelated to this case; and that he is currently not working based on economic decisions made in the best interests of his family. *Id.* Defendants further assert that Plaintiff does not live in Mountainair, that Defendant Reyes is retired, and that Plaintiff has presented no evidence showing he was subjected to or is currently being subjected to ongoing and public harassment based on the alleged defamatory comments. *Id.* To the contrary, Defendants argue that Plaintiff testified that the only people who knew about the alleged defamatory statements, besides Defendants Nieto and Reyes, were himself, his wife, and former Mountainair police officer Mike Shumate. *Id.*

As an initial matter, Plaintiff's conspiracy argument is conclusory, undeveloped, without evidentiary support, and/or is not supported by legal citation. As such, the Court does not consider it. *See Encinas v. Sanders*, 582 F.Supp.3d 861, 870 (D.N.M. Jan. 25, 2022) (courts will not consider undeveloped arguments that are merely mentioned); *see also United States v. Wooten,* 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.")

(citation omitted); D.N.M.LR-Civ. 7.3(a) (motions "must cite authority in support of the legal positions advanced").

That said, the Court finds that Plaintiff's claim pursuant to the NMCRA is time barred. The NMCRA, enacted on July 1, 2021, has prospective application.  It clearly states that "[c]laims arising solely from acts or omissions that occurred prior to July 1, 2021, may not be brought pursuant to the New Mexico Civil Rights Act."  *See* N.M. Stat. Ann. § 41-4A-12 (2021). Here, all of the alleged acts and omissions at issue occurred in April 2020 when Defendants rescinded the job offer and Plaintiff claims he was denied notice of his right to a grievance hearing in front of the Town Council.  Additionally, the alleged defamatory statements that Plaintiff was a "child molester"[9] are alleged to have first occurred during a Town Council closed-door session on April 21, 2020.  Doc. 38-2 at 3.[10]  Thus, the acts and omissions for which Plaintiff seeks damages occurred prior to July 1, 2021, and are, therefore, barred by the NMCRA.

Further, Plaintiff has failed to provide any evidence to support his allegation that defamatory comments continue to be circulated.  Plaintiff testified the only people who knew about the alleged defamatory statements, besides Defendants Nieto and Reyes, were himself, his wife, and former Mountainair police officer Mike Shumate.  But even if there were evidence that the "defamatory comments have continued to be circulated by agents, employees, and officers, of Defendant about Plaintiff," it would not cure Plaintiff's timing defect.  Doc. 38 at 15-16.  Setting aside the question of whether the alleged defamatory statements were deemed published,[11] the

---

[9] Defendants Nieto and Reyes deny ever referring to Plaintiff as a "child molester."  Doc. 40-2 at 1; Doc. 38-4.

[10] Statement of Erie Lopez, attached to Plaintiff's Response.  Doc. 38-2.

[11] "Information is generally considered 'published' when it is made available to the *public*."  *Woodhull v. Meinell*, 202 P.3d 126, 129 (N.M. Ct. App. 2008) (emphasis added); *see also Hagebak v. Stone*, 61 P.3d 201, 205 (N.M. Ct. App. 2002) (recognizing a qualified privilege for intracorporate communication, meaning that statements made by an

statute of limitations on a defamation claim begins to run at the time of initial publication.  *See e.g., Fikes v. Furst*, 61 P.3d 855, 860 (N.M. Ct. App. 2002); *see also Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) ("a cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus is not appropriate for the continuing violation exception.") (citations omitted)).  Moreover, New Mexico follows the single publication rule, which provides:

> No person shall have more than one cause of action for damage for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture.

*Woodhull,* 202 P.3d at 129 (quoting N.M. Stat. Ann. ¶ 41-7-1 (1955)).  New Mexico courts have also extended the rationale of this single publication rule to the question of when a claim accrues for purposes of the statute of limitations.  The New Mexico Court of Appeals has clearly stated that under the single publication rule, "multiple disseminations of the same content give rise to only one cause of action, and the statute of limitations runs from the point at which the original dissemination occurred."  *Id., see also Vigil v. Taintor*, 472 P.3d 1220, 1227 (N.M. Ct. App. 2020).  Applying these legal principles here, the statute of limitations began to run when the alleged defamatory statements initially occurred in April 2020.

Lastly, Plaintiff has failed to provide any evidence to support his allegation of ongoing and public harassment.  Plaintiff has offered no evidence that his future employment was restricted or that he was or currently is being harmed due to ongoing or public harassing by

---

employer to its employees are shielded "when they act in good faith in furtherance of corporate goals, but [not] . . . if they use corporate power simply to serve their own, personal ends."); *see also generally Simmons v. Walgreen Co*., 2010 WL 11619162, *5 (D.N.M. Sept. 27, 2010) (finding that communication regarding why another employee was terminated can be an appropriate use of corporate speech).  Plaintiff has not presented any evidence that the alleged defamatory statements were made available to the public.  Instead, Plaintiff alleges that Defendants Nieto and Reyes referred to him as a "child molester" in a closed-door Town Council meeting on April 21, 2020, and that Defendant Reyes later told Mike Shumate, who was employed as an MPD police officer at the time, that the reason Plaintiff was not hired was because he was a "child molester."  Doc. 38-2 at 3, Doc. 36-5 at 5-6.  Defendants dispute that Defendants Nieto or Reyes ever referred to Plaintiff as a "child molester."  Doc. 40 at 3.

Defendants.  To the contrary, Plaintiff secured employment shortly after the job offer was

rescinded, testified he was subsequently disqualified from being a police officer for medical

reasons, and chose to retire from law enforcement altogether based on the economic interests of

his family.  *See generally, Hourigan v. Cassidy*, 33 P.3d 891, 897 (N.M. Ct. App. 2001) (finding

support for a liberty interest claim based on harassment where evidence demonstrated a pattern

of incidents falsely alleging that plaintiff was a poacher, dogging his footsteps whenever he was

legally hunting, and threatening him with citation for violation of hunting and fishing laws, all of

which resulted in loss of business) (citing *Allen v. Denver Pub. Sch. Bd*., 928 F.2d 978, 982 (10th

Cir. 1991) (finding no liberty interest claim where plaintiff presented no claim that her future

employment was restricted or that she was harmed through the public dissemination of

information regarding her termination) (other citations omitted)).

In sum, the acts and omissions Plaintiff alleges in his Complaint here occurred *prior* to

July 1, 2021.  As such, Plaintiff's claims pursuant to the NMCRA are time barred and are

**DISMISSED WITH PREJUDICE**.

### 2.      Count II - New Mexico Tort Claims Act ("NMTCA")

In Count II of Plaintiff's Complaint, Plaintiff alleges violation of the NMTCA for

defamation and violation of property rights. Doc. 1-1 at 8-9.  Plaintiff alleges that the MPD and

Defendant Reyes engaged in defamation, "and violated Plaintiff's due process rights and his

rights, privileges and immunities secured by the constitution and laws of New Mexico."  *Id.*

Defendants argue that they are entitled to dismissal of all counts under the NMTCA

because Plaintiff's claims are barred by the statute of limitations.  Doc. 36 at 7-8.  Defendants

cite NMSA § 41-4-15(A) which states that "[a]ctions against a governmental entity or a public

employee for torts shall be forever barred, unless such action is commenced within two years

after the date of occurrence resulting in loss, injury or death." *Id.*  Defendants argue that Plaintiff's offer of employment was rescinded on April 22, 2020, and that he did not file his Complaint until March 29, 2023, nearly a year *after* the statute of limitations had already run.  *Id.* Defendants argue, therefore, that Plaintiff's claims under the NMTCA are barred.  *Id.*

In the alternative, Defendants argue that they are entitled to dismissal of Count II because there was no defamation such that Defendants have not waived immunity.  Doc. 36 at 11-12. Defendants argue that Defendant Reyes denies ever referring to Plaintiff as a child molester.  *Id.* Defendants argue that Plaintiff admitted messaging Sierra Saenz.  *Id.*  Defendants argue that the alleged defamatory statements did not occur in the course of terminating Plaintiff because he was never an employee.  *Id.*  Defendants argue that any defamatory statements did not foreclose other employment opportunities for Plaintiff because he was able to secure employment shortly after the job offer was rescinded and remained employed until he medically retired.  *Id.*  Defendants also argue that the alleged defamatory statements were never published and the only witnesses to them were Plaintiff, Plaintiff's wife, and former Mountainair police officer Mike Shumate.  *Id.*

In his Response, Plaintiff asserts that the statute of limitations was tolled in this case based on fraudulent concealment and that equitable estoppel may prohibit a governmental actor from claiming the statute of limitations in the NMTCA when "right and justice demand."  Doc. 38 at 13-14.  Plaintiff asserts that Defendants fraudulently concealed the real reason for the rescission of his job offer and that Plaintiff did not find out the real reason until January 2023.[12] *Id.*  Plaintiff, therefore, asserts that the statute of limitations began to run in January 2023 when

---

[12] Plaintiff alleges that Defendant Reyes refused to inform him as to the "reason for the rescission/termination or inform him of his grievance rights under the written polices of the Town."  Doc. 38 at 2.  Plaintiff further alleges that he learned in January 2023 through a conversation with former MPD officer Mike Shumate that Defendants Nieto and Reyes had informed members of the Town Council that Plaintiff was not hired because he was a "child molester."  *Id.* Defendants dispute this allegation as false.  Doc. 40 at 3.

Plaintiff discovered the "ongoing conspiracy and other violations of his constitutional rights." *Id.*

In their Reply, Defendants argue that fraudulent concealment does not apply here because Plaintiff was notified and aware at the time that the special investigation into his background had something to do with his communications with St. Pius High School student Sierra Saenz.  Doc. 40 at 5-6.  Defendants argue that it is undisputed that on Saturday, April 18, 2020, Defendant Reyes asked Plaintiff whether he was under investigation from any police departments in regard to sexual harassment of minors either electronically or physically and informed Plaintiff he had received complaints he was going to have to look into before Plaintiff started employment on Monday, April 20, 2020.  Doc. 40 at 5-6.  Defendants argue it is also undisputed that Plaintiff subsequently provided Defendant Reyes with copies of the text messages exchanged between himself and Sierra Saenz.  *Id.*

Defendants further argue that the case Plaintiff cites to support his fraudulent concealment argument, *Armijo v. Regents of Univ. of New Mexico*, cannot be applied to the facts of this case.  *Id.*  Defendants explain that in *Armijo*, the New Mexico Court of Appeals determined that where a confidential relationship exists, as between a physician and patient, a duty arises to disclose all material facts relating to the patient's treatment and that a failure to do so may constitute fraudulent concealment for purposes of tolling the statute of limitations. *Armijo*, 704 P.2d 437, 442 (N.M. Ct. App. 1984), *rev'd on other grounds* by *Regents of Univ. of N.M. v. Armijo*, 704 P.2d. 428 (N.M. 1985).  Here, Defendants argue, no such confidential relationship existed giving rise to any duty of disclosure and that Plaintiff's fraudulent concealment argument to toll the statute of limitations should be rejected.  *Id.*

As an initial matter, Plaintiff's mere mention of equitable estoppel as a prohibition against a governmental actor claiming the statute of limitations under the NMTCA and as grounds for tolling the statute is insufficient legal argument and therefore not considered by the Court. *See Encinas,* 582 F.Supp.3d at 870; *Wooten,* 377 F.3d at 1145.

That said, all of the alleged acts and omissions at issue occurred in April 2020.  As such, Plaintiff's claim pursuant to the NMTCA is barred by the statute of limitations.  Claims brought pursuant to the NMTCA are "forever barred, unless [] commenced within two years after the date of occurrence resulting in loss, injury or death[]."  N.M. Stat. Ann. § 41-4-15 (1977).  In its language, Section 41-4-15(A) of the NMTCA creates only one explicit exception to the two-year statute of limitations, *i.e.,* for minors under the age of seven who are allowed until their ninth birthday to file.  N.M. Stat. Ann. § 41-4-15(A) (1977).  New Mexico courts permit "equitable tolling of statutes of limitation in certain circumstances outside of the confines of the particular statute."  *Hagen v. Faherty*, 66 P.3d 974, 978 (N.M. Ct. App. 2003).  New Mexico courts have held that the doctrine of fraudulent concealment applies to toll the limitations periods for certain New Mexico statutes, including the NMTCA.  *See Armijo,* 704 P.2d at 437.

The Court, however, will not apply fraudulent concealment to toll the statute of limitations in this case.  *Armijo*, cited and relied on by Plaintiff, was the first instance that New Mexico appellate courts recognized the tolling effect of a defendant's fraudulent concealment in a NMTCA waiver case.  There the New Mexico Court of Appeals "recognize[d] the duty of a hospital to disclose material facts related to a patient's treatment, [which] bases liability on a breach of that duty, or fraudulent concealment."  *Armijo*, 704 P.2d at 442.  The court further explained that

> The [NMTCA] impliedly recognizes the duty of a hospital and physician to disclose
> material factors relating to a patient's treatment and bases liability on a breach of

> *that duty, or fraudulent concealment*.  Because fraudulent concealment does not create a separate cause of action, but acts to toll the statute of limitations in [] malpractices cases[], it should similarly act to toll the statute under the [NMTCA].

*Id.* (emphasis added).  Plaintiff has not identified any such applicable duty here.  Additionally, the Court cannot find and Plaintiff does not offer any case law since the 1985 decision in *Armijo* where the New Mexico Court of Appeals or the New Mexico Supreme Court have applied these principles in a NMTCA waiver case outside the context of medical malpractice against public hospitals/medical providers.  Because Plaintiff offers no legal authority for the Court to extend the application of fraudulent concealment as a basis for tolling the statute of limitations in NMTCA waiver cases beyond the limits already established by the New Mexico courts, the Court declines to do so.

Even if so, Plaintiff has failed to provide any evidence sufficient to create a genuine issue of material fact to support his claim of fraudulent concealment.  To toll the statute of limitations on the basis of fraudulent concealment, a plaintiff must show all of the following:

> (i) the other party engaged in conduct amounting to intentional false representation or concealment of material facts; (ii) the injured party reasonably relied on the other party and the concealment was successful; and (iii) the injured party did not know, and through the exercise of reasonable diligence, could or should not have known the true facts giving rise to a cause of action.

*Mata v. Anderson*, 685 F.Supp.2d 1223, 1282 (D.N.M. 2010), *aff'd* 635 F.3d 1250 (10th Cir. 2011) (citing *Continental Potash, Inc. v. Freeport–McMoran, Inc.,* 858 P.2d 66, 74 (N.M. 1993); *Kern ex rel. Kern v. St. Joseph Hosp., Inc.,* 697 P.2d 135, 139 (N.M. 1985)).

Here, Plaintiff alleges he did not know the real reason for the job offer being rescinded until January 2023, *i.e.,* that allegedly he had been characterized as a "child molester."  While this characterization is disputed, it is immaterial because the undisputed material facts support that Defendant Reyes did not conceal or misrepresent the basis for reopening the background

investigation.  To the contrary, it is undisputed that Defendant Reyes notified Plaintiff about the complaint made against him, informed Plaintiff the background investigation was being reopened, and questioned Plaintiff about any other investigations undertaken.  Plaintiff in turn provided text messages to Defendant Reyes in response.  Further, because the job offer was rescinded the following day, it is not unreasonable to conclude that Plaintiff knew, or should have known with an exercise of reasonable diligence, the reason the job offer was rescinded.  Thus, even if the Court were inclined to apply fraudulent concealment to toll the statute of limitations here, which it is not, Plaintiff has failed to provide evidence necessary to satisfy the elements of fraudulent concealment.

In sum, the acts and omissions Plaintiff alleges in his Complaint here occurred in April 2020.  As such, Plaintiff's claims pursuant to the NMTCA are time barred and are **DISMISSED WITH PREJUDICE**.

### C.    <u>Breach of Contract</u>

In Count III of Plaintiff's Complaint, Plaintiff alleges that the Town of Mountainair's job offer and his acceptance support the formation of an implied contract and that the Town of Mountainair was bound by certain procedures found in its Personnel Policy for any subsequent employment-related actions, including their rescission of the job offer.  Doc. 1-1 at 9.  Plaintiff alleges the job offer was rescinded without the consent of the Town Council as required and that he was not provided the ability to grieve and appeal the rescinded job offer pursuant to provisions of the Town's Personnel Policy.[13]  Doc. 1-1 at 9.  Plaintiff alleges that he could

---

[13] Plaintiff relies on Section 11-1-14, *Termination*, of the Town of Mountainair's Personnel Policy, which provides for, *inter alia*, dismissal of *probationary* employees.  It states that

> [a] probationary employee may be dismissed at any time without cause.  Dismissal of a probationary employee will be done in writing.  An employee dismissed during probation may request a hearing pursuant to grievance and appeal procedures.  An employee dismissed during probation by the Mayor and/or Supervisor, may request to be heard at the next regular scheduled Town Council

reasonably expect Defendants to follow their own procedures including, but not limited to, allowing for an opportunity for Plaintiff to view the allegations against him and respond to them before a fair and impartial decision maker before his termination could take place.  *Id.* at 10.

In their Motion, Defendants argue they are entitled to dismissal of Count III because Plaintiff was never an employee of the Town of Mountainair and had no employment contract such that Town's Personnel Policy did not apply to him.  Doc. 36 at 12.  Defendants argue that for a contract to be legally valid and enforceable, it "must be factually supported by an offer, an acceptance, consideration, and mutual assent."  *Id.* (quoting *Garcia v. Middle Rio Grande Conservancy Dist.,* 1996-NMSC-029, ¶ 9, 121 N.M. 728, 918 P.2d 7).  Defendants argue that while Plaintiff can show that Defendants made an offer that he arguably accepted, Plaintiff cannot show consideration or that there was mutual assent amongst the parties.  *Id.* at 13. Defendants argue that Plaintiff cannot show that the rate of pay referenced in internal emails was relayed and/or promised to him.[14]  *Id.*  Defendants argue that the hiring process was put on hold pending an investigation into the complainant's allegations against Plaintiff.  *Id.*  Defendants argue that Plaintiff never filled out employment paperwork, was never put on the payroll, and performed no services for the Town of Mountainair/MPD.  *Id.*

Defendants further argue that Plaintiff's assertion that he should have had an opportunity to grieve the rescinded employment offer must be rejected because Plaintiff was an applicant and

---

meeting by the Town Council.  A decision shall be made at that meeting to determine if the probationary employee will be terminated or re-instated.

Doc. 38-2 at 33-34.

[14] In his Complaint, Plaintiff states that in an internal email from Defendant Reyes to Defendant Nieto and the Town Clerk, Defendant Reyes indicated he "[w]ould like to offer [Gabaldon] $19.25 per hour to start, as a Corporal I (for now) with the Certified Officer bonus, incentive included.  After a year of employment if all goes well, with him we promote him to Sgt of Patrol to $20.00 per hour."  Doc. 1-1 at 3, ¶ 9.

his employment was conditioned on a favorable background check.  Doc. 36 at 13.  Defendants

argue that even if Plaintiff were an employee, he would have been a probationary employee and

pursuant to the Town's Personnel Policy could be terminated without cause and had no right to

an appeal.[15]  *Id.* at 13-14.

In his Response, Plaintiff cites New Mexico case law which he contends supports he had

an implied contract of employment with the Town of Mountainair/MPD.  Doc. 38 at 17-18.

Plaintiff cites *Beggs v. City of Portales*, 210 P.3d 798 (N.M. 2009), for the legal principle that

whether an implied employment contract exists is a question of fact and that evidence may be

found in written expressions, in oral representations, in the conduct of the parties, or in a

combination of representations and conduct.  *Id.*  Plaintiff cites *Kestenbaum v. Pennzoil Co.,* 766

P.2d 280 (N.M. 1988) for the legal principle that "where there is proof of a promise sufficient to

support an implied contract, the consideration sufficient to support the implied contract will be

implied as a matter of law."  *Id.*  And Plaintiff cites *Hartbarger v. Frank Paxton*, 857 P.2d 776

(N.M. 1993) for the legal principle that there is no need for an additional finding of mutual

assent in the context of implied contracts under well-established New Mexico law.  *Id.*  Against

this backdrop, Plaintiff argues that on April 13, 2020, the Town of Mountainair approved his

hiring, that Plaintiff accepted the position, and that Plaintiff attended a mandatory but unpaid

meeting on April 17, 2020, at which time he was introduced as a new police officer.  *Id.* at 18.

Plaintiff contends that Defendant Reyes, without formal action or written notice from the Town

Council, reneged on the offer of employment in violation of the Town of Mountainair's policies.

*Id.*  Plaintiff contends that as a probationary employee he was entitled to file a grievance and be

---

[15] Defendants rely on Section 11-1-9, *Recruitment, Selection and Appointment*, of the Town of Mountainair's
Personnel Policy, which provides that "[a] probationary employee may be terminated without cause and has no right
to appeal dismissal."  Doc. 36-4 at 23.

provided with an opportunity to clear his name to protect his liberty interest in future employment. *Id.* Plaintiff contends that Defendants Reyes and Nieto's violation of the Town's own written policies and procedures was arbitrary and capricious. *Id.* at 19. Plaintiff contends that because the foregoing material facts are in dispute, his alleged substantive due process violation should go forward. *Id.*

In their Reply, Defendants reassert that Plaintiff has failed to carry his burden of demonstrating a valid employment contract. Doc. 40 at 8-9. Defendants argue that Plaintiff never filled out paperwork, was never put on the payroll or compensated, and was never issued equipment essential to his job. *Id.* Defendants further argue that Plaintiff cannot show mutual assent because his employment was conditioned on a favorable background check, which Plaintiff did not pass after his background investigation was reopened. *Id.* Defendants argue that because Plaintiff was not an employee, any rights afforded terminated probationary employees did not apply to him. *Id.* Last, Defendants argue that Plaintiff has failed to point to any policy or procedure supporting his argument that the Town Council has to approve a recission to an offer of employment or that he was entitled to a "name clearing" hearing. *Id.*

In New Mexico, an employment relationship is presumed to be terminable at will by either party. *Hartbarger,* 857 P.2d at 779. However, the presumption is rebuttable by an implied contract term that restricts the employer's power to discharge. *Id.* "For example, an employer's representations which give rise to a reasonable expectation that employees will be terminated only for good cause, may create an implied contract." *Kiedrowski v. Citizens Bank*, 893 P.2d 468, 471 (N.M. Ct. App. 1995*); see also Newberry v. Allied Stores, Inc.,* 773 P.2d 1231, 1234 (N.M. 1989) (upholding findings of an implied employment contract provision that restricted the employer's power to discharge where the facts showed that the employer either has

20

made a direct or indirect reference that termination would be only for just cause or has established procedures for termination that include elements such as a probationary period, warnings for proscribed conduct, or procedures for employees to air grievances); *Sullivan v. Am. Online, Inc.,* 219 F. App'x 720, 721 (10th Cir. 2007) (unpublished) (quoting *Hartbarger*, 857 P.2d at 785) ("An employer creates an implied contract where the employer's action 'was intended, or reasonably could be interpreted by [the employee] to be confirmation of an implied contract or modification of the employment relationship.'").

When a court is called upon to determine if an implied contract for employment has been created, the court should "consider the totality of the parties' relationship, circumstances, and objectives," to assess whether an employee's belief that an implied contract existed was objectively reasonable under the circumstances. *Hartbarger,* 857 P.2d at 785–786. Where a plaintiff presents evidence of a promise sufficient to support an implied contract, consideration for the implied contract will be implied as a matter of law by the court. *Id.* at 781. The terms of the implied contract must be sufficiently explicit. *See Garrity v. Overland Sheepskin Co. of Taos,* 917 P.2d 1382, 1385 (N.M. 1996). "[B]ecause an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable." *West v. Wash. Tru Solutions, LLC,* 224 P.3d 651, 653 (N.M. Ct. App. 2009).

Considering the totality of the circumstances here and the undisputed material facts, the Court finds as a matter of law that Plaintiff's expectations of an implied contract are not objectively reasonable because he was never employed by the Town of Mountainair/MPD. It is undisputed that MPD's offer of employment was expressly conditioned upon Plaintiff passing a background investigation. It is undisputed that Plaintiff initially passed the background

investigation after which the Town Council approved of and offered Plaintiff a job as a police

officer, which Plaintiff accepted.  It is undisputed that before Plaintiff began work on the parties'

agreed upon start date of April 20, 2020, Defendant Reyes reopened the background

investigation based on a complaint involving Plaintiff's text message exchange with St. Pius

High School student Sierra Saenz.  It is undisputed that Defendant Reyes notified Plaintiff that

his background investigation was being reopened based on this complaint and informed Plaintiff

he was going to have to wait to start employment.  It is undisputed that Plaintiff did not report for

work on April 20, 2020, and that on April 21, 2020, Defendant Reyes informed Plaintiff during a

phone call and in writing that his employment offer was rescinded.[16]  While Plaintiff disputes

that the text messages at issue gave rise to inappropriate content or behavior and alleges that the

rescinded job offer required approval by the Town Council[17] and that work-related equipment

had been issued to him,[18] what is material and undisputed is that Plaintiff did not pass the

---

[16] Plaintiff does not dispute that a letter was sent.  Doc. 38 at 5.  Instead, he alleges he never received a letter rescinding his offer of employment.  Doc. 38 at 9, ¶ CC.  Defendants dispute this as immaterial.  Doc. 40 at 3.

[17] Plaintiff does not cite to any procedures or process in the Town of Mountainair's Personnel Policy for rescinding a job offer to which the Town of Mountainair/MPD was bound in taking action in this regard, nor does Plaintiff cite to any representations made to him during the hiring process about required procedures or process for rescinding a job offer sufficient to create a reasonably objective expectation of an implied contract with him as a prospective employee. Thus, Plaintiff's allegation that the job offer was improperly rescinded fails to create a genuine issue of material fact for determining whether an implied contract existed and his reliance on his allegation to do so is not objectively reasonable and is unfounded.  *Garrity*, 917 P.2d at 1385 (terms of the implied contract must be sufficiently explicit); West, 224 P.3d at 653 (employee's expectations of an implied contract must be objectively reasonable).

[18] Plaintiff's allegation that he was issued equipment is insufficient to create a genuine issue of material fact for determining whether an implied contract existed.  Plaintiff alleges that the Town of Mountainair issued him a cell phone, a desk, business cards, and email account.  Doc. 38 at 7, ¶ H.  In support, Plaintiff cites and relies upon former MPD officer Mike Shumate's deposition testimony wherein he testified that when he began working for the MPD one year later in March 2021, he saw a cell phone box with Plaintiff's name on it and that he was "pretty sure" there were business cards and an email account "if [he] remembers right."  Doc. 38-5 at 5.  Mr. Shumate also testified there was equipment laying on a desk that included a duty belt for a gun, a handcuff case, and a bulletproof vest, and that "he assumed" this was issued to Plaintiff the previous year.  *Id.* at 6.  Defendants dispute these allegations as immaterial. Doc. 40 at 3.  Notably, Plaintiff does not provide evidence that any of these items, even if generically issued in anticipation of his future employment, were actually given to him or that he took possession of them while he was a prospective employee.

reopened background investigation, such that an employment contract between Plaintiff and the Town of Mountainair/MPD was never formed. *See Elephant Butte Resort Marina, Inc. v. Wooldridge*, 694 P.2d 1351, 1354 (N.M. 1985) (noting that "[i]n a contract, a condition precedent is a condition or right which must be met before the contract is formed"). Moreover, it is undisputed that Plaintiff never completed or submitted any employment paperwork[19] and never received compensation from the Town of Mountainair/MPD for services rendered. *See Fillpot v. Intel Corp*., No. CIV 07-1216 RB/WPL, 2008 WL 11409480, at *5 (D.N.M. Nov. 3, 2008) (citing *Elephant Butte Resort Marina, Inc.,* 692 P.2d at 1354) (finding as a matter of law that plaintiff was not an employee where the offer of employment was expressly conditioned upon passing a background investigation, and where plaintiff never reported to work, never submitted employment paperwork, and never received any compensation)). Thus, Plaintiff's claim that an implied contract existed is not objectively reasonable because he was never an employee of the Town of Mountainair/MPD and, therefore, was not entitled to notice of and a grievance hearing as a terminated probationary employee. *West,* 224 P.3d at 653.

---

Plaintiff also alleges that on April 21, 2020, the Town of Mountainair approved the purchase of police equipment specifically for Plaintiff. Doc. 38 at 7, ¶ L. Defendants dispute this as false. Doc. 40 at 3. Plaintiff cites and relies upon April 21, 2020, Town Council minutes, which state in pertinent part:

> 14. **APPROVAL OF PURCHASE OF POLICE EQUIPMENT FOR NEW OFFICER**. Nieto said this is to purchase tazers for the new officer. This amount exceeds the procurement authority of the Mayor so it is being presented to Council. Carrillo asked if we already have it or does it need to be ordered. Nieto said it needs to be ordered. Lopez asked if we have any from previous officers. The reserve officer has the two units from prior officers. *This purchase will give our five officers and two reserves tazer units.*

Doc. 38-2 at 14 (emphasis added). The motion for new tazers for MPD officers and reserves was approved. *Id.* Notably, these minutes demonstrate that the approval for purchase of police equipment on April 21, 2020, was not specific to Plaintiff as he alleges. Plaintiff's reliance on this to support an implied contract, therefore, is not objectively reasonable and is unfounded.

[19] Section 11-1-9.l of the Town of Mountainair's Personnel Policy states that "[n]o employee shall begin work until properly signed up by the Clerk." Doc. 8-2 at 24.

Further, the case law Plaintiff cites is not applicable to the facts or legal issues presented here.  For instance, in *Beggs*, retired city employees brought an action against the City of Portales for declaratory judgment and breach of contract, objecting to the city's decision to no longer reimburse retired employees for health insurance premiums.  *Beggs*, 210 P.3d at 798.  The district court granted summary judgment against the retirees and the New Mexico Court of Appeals affirmed.  *Id.* at 800.  The New Mexico Supreme Court, however, reversed summary judgment having been persuaded that evidence showed the existence of genuine issues of material fact regarding the existence of contractual rights on behalf of the retirees to continue receiving health insurance benefits at the rate they allege they and the city agreed upon at the time of their retirement which should be resolved by a factfinder at a trial on the merits.  *Id.*

Plaintiff asserts that he similarly presents evidence of genuine issues of material fact that require resolution by a factfinder at trial, *i.e.,* whether the job offer and acceptance, along with being introduced as a new officer at the April 17, 2020, meeting, along with equipment being issued, and along with the alleged improper rescission of the job offer, demonstrate the existence of an implied contract such that he was entitled to notice of and a grievance hearing accorded to terminated probationary employees pursuant to the Town's Personnel Policy.  The Court, however, finds that to the extent any of these facts are disputed, they are not material to determining the existence of an implied contract or whether Plaintiff was ever an employee of the Town of Mountainair/MPD.  To the contrary, the undisputed material facts unequivocally support he was not.

In *Hartbarger,* an employee brought an action against his former employer for breach of implied contract after he was terminated for refusing to accept a lower rate of commission on his sales.  *Hartbarger*, 857 P.2d at 776.  The employee argued that his employer was required and

failed to establish good cause for his termination.  *Id.* at 779.  The district court entered judgment for the employee, but the New Mexico Supreme Court reversed and remanded finding the evidence did not support a finding that the employer made an offer or promise sufficiently explicit to establish an implied contract and overcome the presumption of at-will employment. *Id.* at 786.  In sum, the court found that the totality of the evidence was insufficient to find a promise that employment could be terminated only for just cause.  *Id.* at 785.

As for the legal principles of consideration and mutual assent addressed in *Hartbarger* that Plaintiff relies on here in response to Defendants' arguments,[20] Plaintiff has failed to demonstrate their application.  The court in *Hartbarger* was addressing whether the element of consideration "limits the enforceability of the employer's promise to those instances in which the employee provides some consideration in addition to the services to be rendered."  *Id.* at 781.  In other words, the question was whether additional consideration by an employee beyond showing up for and working at a job was required to enforce an employer's promises of termination only for just cause.  The New Mexico Supreme Court said no and held that "where there is proof of a promise sufficient to support an implied contract, the consideration sufficient to support the implied contract will be implied as a matter of law by the court where the promise was part of the original employment agreement or was made later in modifying the employment relationship."  *Id.*  With respect to mutual assent, the New Mexico Supreme Court similarly held that "[w]hen an employer offers to restrict its power to discharge, the employee's assent to the restriction need not be evinced by anything more than commencing or continuing employment."

---

[20] Plaintiff also cites *Kestenbaum v. Pennzoil Company*, 766 P.2d 280 (N.M. 1988) for the legal principle that "where there is proof of a promise sufficient to support an implied contract, the consideration sufficient to support the implied contract will be implied as a matter of law"; however, this quote and discussion in found in *Hartbarger*, 857 P.2d at 781.  The Court, therefore, will not address *Kestenbaum*.

*Id.* at 782.  Thus, the issues of consideration and mutual assent in *Hartbarger* were considered in the context of employer promises sufficient to overcome the presumption of at-will employment.

Here, the question of whether Plaintiff was required to or provided consideration necessary to support any promise of termination only for just cause is not at issue.  Moreover, Plaintiff's Response fails to address Defendants' argument that Plaintiff never commenced employment, was never an employee of the Town of Mountainair/MPD, and that the consideration necessary to form a legally valid and enforceable contract, *i.e.,* Plaintiff's reporting for work on April 20, 2020, and rendering services as police officer, was never provided. Plaintiff's Response also fails to address or provide evidence to create a genuine issue of material fact that Plaintiff's employment was conditioned upon a favorable background investigation, which Plaintiff failed to satisfy.

In sum, Plaintiff has failed to create a genuine issue of material fact to support the existence of a valid employment contract or that he was employed by the Town of Mountainair/MPD.  The Court, therefore, finds that Plaintiff's claim for breach of contract necessarily fails and further finds that any policies or procedures set forth in the Town's Personnel Policy regarding probationary employees did not apply to Plaintiff as a prospective employee.  For these reasons, Defendants' Motion seeking summary judgment on Plaintiff's Count III Breach of Contract is **GRANTED**.

**D.**     **42 U.S.C. § 1983**

**1.**     **Procedural and Substantive Due Process Violations**

In Count IV of Plaintiff's Complaint, Plaintiff alleges procedural and substantive due process violations pursuant to 42 U.S.C. § 1983 and defamation against all Defendants.  Doc. 1-1 at 10.  Plaintiff alleges that the defamatory statements made by Defendants Nieto and Reyes

impugned his good name, reputation, honor and integrity; they were false; they occurred in the course of terminating Plaintiff's employment and foreclosed other employment opportunities; they were published; and Plaintiff was denied a name clearing hearing. *Id.*

In their Motion, Defendants argue that they are entitled to dismissal of Count IV because Defendants Nieto and Reyes did not defame Plaintiff. Doc. 36 at 10-11. Defendants argue that to succeed on a defamation claim in the Tenth Circuit, Plaintiff must show that his reputation was damaged "in connection with [an] adverse action taken against [him]" and that "defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest." *Id.* (citing *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989) and *Renaud v. Wyoming Dep't of Family Servs.*, 302 F.3d 723, 826-27 (10th Cir. 2000)). Defendants argue that Plaintiff cannot meet the requisite test for whether statements infringe upon a liberty interest because they never made defamatory statements; Plaintiff was an applicant and not an employee of the Town of Mountainair/MPD and the alleged statements did not occur in the course of his being terminated from employment; Plaintiff admitted sending text messages to a high school student; the alleged defamatory statements did not foreclose other employment opportunities because Plaintiff secured employment and was employed until he medically retired; and the alleged statements were never published. *Id.*

Defendants further argue that even if Plaintiff were able to establish a property or liberty interest in his employment with the Town of Mountainair/MPD, he must still establish that the deprivation of that interest was arbitrary and capricious and that only the most egregious official conduct qualifies as arbitrary in the constitutional sense. Doc. 26 at 14. Defendants argue that the conduct alleged by Plaintiff does not rise to the level of being arbitrary or shocking to the conscience. *Id.*

In his Response, Plaintiff contends that he has alleged and testified that the defamatory statements have indeed "foreclosed employment opportunities." Doc. 38 at 16-17. Plaintiff further contends that witnesses to the defamatory statements included more than Mike Shumate but included the entire "Town Council." *Id.* Plaintiff also contends that the Due Process Clause of the Fourteenth Amendment protects individuals against state action that either shocks or interferes with fundamental rights implicit in the concept of ordered liberty. *Id.* at 19. Plaintiff contends that the actions of Defendant Nieto and Reyes were arbitrary and capricious because the "rescission/termination violated the Town's own written policies and procedures." *Id.* Plaintiff contends that the "rationale concocted by Nieto and Reyes was egregious and defamatory per se." *Id.*

To establish a claim under 42 U.S.C. § 1983, a plaintiff must allege the deprivation of a federal right and that the person who deprived him of that right was acting under color of state law. *See West v. Aikins*, 487 U.S. 42, 48 (1988). The Fourteenth Amendment states: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a State to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property." *Chavez-Rodriguez v. City of Santa Fe*, No. CIV 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008).

a.        **Property and Liberty Interests**

Plaintiff has failed to provide evidence sufficient to create a genuine issue of material fact that Defendants deprived him of a constitutionally protected property or liberty interest.  Here, the Court has determined as a matter of law that Plaintiff was never an employee of the Town of Mountainair/MPD but was an applicant.  *See* Section IV.C., *supra*.  An applicant for employment does not have a constitutionally protected property interest in the job for which he is applying.  *See  Bd. of Regents of State Colls. v. Roth*, 408 U.S. at 577, 92 S.Ct. 2701 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *see also Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) ("An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.'").  As such, Plaintiff cannot show that he was deprived of a property interest for which due process was required.  *See Dickeson v. Quarberg*, 844 F.2d 1435, 1438 (10th Cir. 1988) ("If a plaintiff can prove he has a property interest in his employment, a state cannot deprive him of that interest without due process.").

Further, to demonstrate a deprivation of liberty interest based on the alleged defamatory statements, a plaintiff must satisfy a four-part test:  "First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee.  Second, the statements must be false.  Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities.  And fourth, the statement must be published." *Renaud,* 203 F.3d at 726 (quoting *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)); *see also Paul v. Davis*, 424 U.S. 693, 701 (1976) (explaining that an individual's liberty interest in his reputation is only sufficient "to invoke the procedural protection of the Due Process Clause"

if combined with "some more tangible interest[] such as employment").  Only after "a liberty interest is implicated" are "the due process protections of the Fourteenth Amendment . . . innervated." *Workman*, 32 F.3d at 480.  At that point, a plaintiff must show he "was not afforded an adequate name-clearing hearing." *Id.*

Because the elements for demonstrating a deprivation of liberty "are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest." *Id.* at 481.  Thus, even if the Court were to assume that the alleged defamatory statements were made and were false, Plaintiff cannot demonstrate that Defendants deprived him of a liberty interest in his good name and reputation.

First, having found as matter of law that Plaintiff was never an employee of the Town of Mountainair/MPD, the alleged defamatory statements were not made in the course of terminating Plaintiff's employment.

Second, the undisputed material facts demonstrate that Plaintiff was hired by the Thirteenth Judicial District Attorney's office shortly after the rescinded offer; that he chose to seek work that did not include patrol duties; that he later was medically disqualified from work as a law enforcement officer because of an injury to his shoulder unrelated to this case; and that he is currently not working based on economic decisions made in the best interests of his family. Moreover, Plaintiff's allegations and testimony of "foreclosed employment opportunities," without citation to the record, are insufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(2) (explaining if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of a motion for summary judgment).

Third, Plaintiff has failed to provide evidence that the alleged defamatory statements were published.  A statement is "published" if it is "made public."  *Bishop v. Wood*, 426 U.S. 341, 348 (1976).  And the Tenth Circuit has held that "intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication" because such statements are not "made public."  *Asbill v. Hous. Auth. Of the Choctaw Nation of Okla.,* 726 F.2d 1499, 1503 (10th Cir. 1984); *see also Lollis v. City of Eufaula*, 249 F. App'x 20, 25 (10th Cir. 2007) (unpublished) (explaining that statements between the city police department and the city council were intragovernmental).  Here, Plaintiff has alleged that the defamatory statements were made by either Defendants Nieto or Reyes initially at a Town Council meeting on April 21, 2020, and then by Defendant Reyes to Mike Shumate in March 2021, when Mr. Shumate was employed as a Mountainair police officer.   The Court, therefore, does not consider these statements published for purposes of Plaintiff's liberty interest in his good name or reputation.

### b.    Substantive Due Process

Plaintiff's substantive due process claim necessarily fails because Plaintiff has failed to establish a property interest in continued employment.  A public employee with a property interest in continued employment has a substantive due process right not to be terminated for arbitrary or capricious reasons. *Curtis v. Okla. City Pub. Schs. Bd. of Educ.,* 147 F.3d 1200, 1215 (10th Cir.1998) (quoting Tenth Circuit authority for the proposition that "[i]n order to present a claim of denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach").  A substantive due process claim, if viable, requires assessing whether a governmental action is arbitrary, irrational, or shocking to the contemporary conscience.  *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.,* 341 F.3d 1197, 1200–01 (10th Cir. 2003); *Tonkovich,* 159 F.3d at 528.  Here,

Plaintiff was never employed by the Town of Mountainair/MPD.  Instead, the offer of

employment was rescinded when Plaintiff failed to pass the reopened background investigation.

As such, he can neither establish a property interest in continued employment nor that he was

terminated for arbitrary or capricious reasons.

For all of the foregoing reasons, the Court finds that Plaintiff has failed to provide

evidence of genuinely disputed material facts to defeat Defendants' Motion as to Count IV.

Defendants' Motion as to Count IV, therefore, is **GRANTED**.

### 2.      Supervisory and City Liability

Finally, in Count V of Plaintiff's Complaint, Plaintiff alleges supervisory and city

liability under 42 U.S.C. § 1983 against Defendant Town of Mountainair.  Doc. 1-1 at 11-12

Tenth Circuit law instructs that a municipality will not be held "liable [for constitutional

violations] when there is no underlying constitutional violation by any of its officers." *Olsen v.*

*Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (quoting *Hinton v. City of Elwood,*

997 F.2d 774, 782 (10th Cir.1993)).  Similarly, a county or sheriff in his official capacity cannot

be held "liable for constitutional violations when there was no underlying constitutional violation

by any of its officers."  *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (citing *Olsen,*

312 F.3d at 1317–18) (internal quotations marks and brackets omitted).  Because Plaintiff has

failed to establish that Defendants Nieto or Reyes deprived him of a federal right, Defendants are

entitled to summary judgment as to Plaintiff's Count V.  *See* Section IV.D.1., *supra.*

### E.      Other Matters

Having determined that Plaintiff's claims pursuant to the NMCRA and the NMTCA are

time barred, and that Plaintiff has failed to provide evidence of genuine issues of material fact

regarding the existence of an implied contract or deprivation of a federal right, the Court need

not address Defendants' arguments regarding qualified immunity or the necessity of additional parties.

## V.  CONCLUSION

For all of the foregoing reasons, the Court finds that Defendants' Joint Motion for Summary Judgment (Doc. 36) is well taken and is **GRANTED**.

**IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**